**UNITED STATES of America, Appellee,**

v.

**William David HILL, Appellant.**

**No. 75–1629.**

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided Aug. 9, 1976.

Peter L. Sissman, Fairfax, Va., for appellant.

Thomas K. Berger, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and HADEN, District Judge.*

WIDENER, Circuit Judge:

This case presents the question of whether a juvenile under the 1974 amendments to the Juvenile Delinquency Act is entitled to indictment by grand jury and trial by jury under Article III and the Fifth and Sixth Amendments to the Constitution. Also presented is the question of the degree of formality required in certification of the juvenile for a delinquency proceeding in a district court.[1] We affirm the finding of the district court that the defendant was a juvenile delinquent.

The United States Attorney filed an information against the defendant, William David Hill, on February 28, 1975. Hill was then 18 years of age, having been 17 years

---

* United States District Court for the Northern and Southern Districts of West Virginia, sitting by designation.

1. No Seventh Amendment question is raised.

of age on November 5, 1974, when he was one of the persons who robbed the Clarendon Bank and Trust Company in Arlington County, Virginia. The information charged that Hill committed an act of juvenile delinquency by committing the bank robbery, which would have been a crime had he been an adult, as a violation of 18 U.S.C. §§ 2113(a) and (d) and 18 U.S.C. § 2.

The defendant properly raised the questions that he should have been indicted by a grand jury and tried by jury upon his demand, and that his juvenile delinquency case had been improperly certified to the district court.

The Juvenile Delinquency Act, prior to 1974, contained a specific provision in 18 U.S.C. § 5033 that the proceeding "shall be without a jury." The juvenile was required to give his consent in writing to be proceeded against as a juvenile delinquent, rather than as an adult, and such consent was "deemed a waiver of a trial by jury." The 1974 amendments to the statute, 18 U.S.C. §§ 5031–5042 inclusive, repealed the consent provision of former § 5033, and the effect of § 5032 of the present statute is that proceedings against juveniles shall be as juveniles under the Juvenile Delinquency Act unless the juvenile has requested in writing, upon advice of counsel, to be proceeded against as an adult. If the juvenile is 16 years of age or older and the act which he is alleged to have committed would be a felony, punishable by more than 10 years' imprisonment, the United States may ask that his prosecution be transferred to a regular criminal prosecution if the transfer would be in the interest of justice.

Thus, the import of the statute has changed; formerly, it provided for trial of a juvenile as an adult unless the juvenile consented to be tried as a juvenile; now, it provides for trial of a juvenile as a juvenile unless he requests trial as an adult. Formerly, the statute provided for trial with-

out a jury; now, the statute is silent as to trial by jury.

The defendant contends that Article III and the Sixth Amendment entitled him to trial by jury on demand. We do not agree.

An examination of the present Juvenile Delinquency Act shows that its purpose is to be helpful and rehabilitative rather than punitive, and to reduce, at least to some extent, the stigma of criminal conviction. To briefly abstract some of the provisions of the statute, for example, the defendant is not adjudged to be guilty as a criminal, rather, he is adjudged to be a juvenile delinquent, see § 5037; upon being taken into custody, his parents, guardian, or custodian shall be notified of the fact, as well as of his rights, see § 5033; a guardian ad litem may be appointed by a magistrate, who shall release the juvenile to a responsible party in lieu of bond or bail, see § 5034; he may be detained only in a juvenile facility or another suitable place and, if possible, in a foster home or community based facility rather than jail, see § 5035; a special speedy trial provision is included, see § 5036; broad powers of disposition are granted, including confinement far less than for adult offenses, see § 5037; the disclosure of records of a juvenile proceeding is severely limited, see § 5038; he shall not be placed or detained in an adult jail in which he has regular contact with adults convicted of crime or awaiting trial on criminal charges, see § 5039; and his parole shall be granted as soon as the board is satisfied he is likely to remain at liberty without violating the law and when such release would be in the interest of justice, see § 5041.

The above recitations make it clear that the treatment of juveniles[2] is a far cry from that accorded the common criminal.

While a series of cases with respect to juveniles have accorded them certain

---

**2.** 18 U.S.C. § 5031 provides: "For the purposes of this chapter, a 'juvenile' is a person who has not attained his eighteenth birthday, or for the purpose of proceedings and disposition under this chapter for an alleged act of juvenile delinquency, a person who has not attained his twenty-first birthday, and 'juvenile delinquency' is the violation of a law of the United States committed by a person prior to his eighteenth birthday which would have been a crime if committed by an adult."

rights,[3] in order that the juvenile delinquency proceeding be conducted as one that is fundamentally fair, the Supreme Court, in *McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), specifically held that a jury was not required in a State juvenile delinquency proceeding, and stated that "one cannot say that in our legal system the jury is a necessary component of accurate fact finding." While the opinion of the Court was by a plurality of four justices, five joined in the holding with respect to trial by jury.

The *McKeiver* case was an appeal from the Supreme Court of Pennsylvania and was decided under the due process clause of the Fourteenth Amendment. Since then circuits which have considered the matter have found that the standard is no less applicable to the courts of the United States. *United States v. Torres,* 500 F.2d 944 (2d Cir. 1974); *Cotton v. United States,* 446 F.2d 107 (8th Cir. 1971); *United States v. Salcido-Medina,* 483 F.2d 162 (9th Cir. 1973); *United States v. King,* 482 F.2d 454 (6th Cir. 1973).

■ We follow the holdings of those courts and hold that the same standard should apply to courts of the United States as to courts of various States in determining when trial by jury is required in juvenile delinquency proceedings. We see nothing in the statute which would cause us to believe that the proceeding against Hill was essentially criminal rather than an ascertainment of status as a juvenile delinquent.

■ Since Hill was being tried as a juvenile delinquent and not as an adult, we hold that he had no right to trial by jury, and are of opinion *McKeiver* controls the question. The fact that an Act of Congress denied a juvenile defendant trial by jury under the former statute, and an act of the

district court denied him trial by jury under the present statute should make no difference. Since the essential nature of the proceeding was the ascertainment of his status as a juvenile delinquent rather than his conviction as a criminal, the Constitution does not require trial by jury.

■ The defendant argues that *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), requires a different result. In *Jackson,* the federal kidnapping statute authorized the death penalty only in aggravated cases upon the recommendation of a jury after a jury trial. So, if a defendant waived trial by jury and was tried to the court on a plea of not guilty, or if he had pleaded guilty, the death penalty could not be imposed. The court held that the necessary requirement of waiver of a jury trial to escape the possible imposition of the death penalty was an impermissible burden on the defendant's basic right to trial by jury and struck down the death penalty provision of the statute on that ground. In *Jackson,* however, the holding of the Court necessarily was that the defendant had a right in a criminal prosecution to trial by jury as to his guilt whether or not the death penalty were imposed. In the case of a juvenile delinquent, there is no constitutional right to trial by jury in the ascertainment of the status of a defendant as a juvenile delinquent, and if the defendant should wish to be treated as a criminal rather than as a juvenile delinquent, he is free so to request. The status places no compulsion upon him. It does no more than to provide an alternative which he is free to choose should he so desire. Accord *United States v. Torres,* 500 F.2d 944 (2d Cir. 1974) (decided under the Juvenile Delinquency Act prior to 1974 amendments). Cf. *United States v. King,* 482 F.2d 454 (6th Cir. 1973);

---

**3.** The rights are summarized in *McKeiver,* infra, 403 U.S. at 533, 91 S.Ct. 1976: appropriate notice, counsel, confrontation and cross-examination, privilege against self-incrimination, and the requirement of proof beyond a reasonable doubt. See *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d

325 (1962); *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *Debacker v. Brainard,* 396 U.S. 28, 90 S.Ct. 163, 24 L.Ed.2d 148 (1969); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

contra, *Nieves v. United States,* 280 F.Supp. 994 (S.D.N.Y.1968).

■ The next argument of the defendant is that he had the right to be indicted by a grand jury.

The statute, § 5032, provides that the proceeding "shall proceed by information." Also, § 5031 provides that juvenile delinquency is a violation of law "which would have been a crime if committed by an adult." Since the Fifth Amendment provision requiring grand jury indictment on its face applies only to "a capital, or otherwise infamous crime," and since *McKeiver,* among other cases, has held that juvenile delinquency is not a crime, the Constitution on its face has no application to the claim of the defendant. See *Kent v. United States,* 383 U.S. 541, 555, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *In re Gault,* 387 U.S. 1, 15, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). While it is true *Kent* and *Gault* did not hold that a grand jury was not required in juvenile proceedings, those cases did recite that its absence or the absence of like formalities were within the intent of the various juvenile statutes. Since the defendant has not been charged with a crime, and since the intervention of a grand jury plays no part in the essential fairness of the proceeding so far as "accurate fact finding" is concerned, *McKeiver,* 403 U.S. at 543, 91 S.Ct. 1976, we are of opinion the statutory provision providing for proceeding by information rather than indictment is free from constitutional infirmity as to the claim of conflict with the Fifth Amendment.

The defendant next maintains that the district court had no jurisdiction in this case because of an imperfect certification of the case to the district court by the United States Attorney. Section 5032 provides that a juvenile "shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State . . . refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency." It is

admitted that Virginia does have a juvenile court system which could have had jurisdiction over the person of the defendant and with respect to the act with which he was charged. There is no contention Virginia does not have available programs and services adequate for the needs of juveniles. See § 5032.

The United States Attorney filed his certificate under § 5032 the same day he filed the information. That part of the certificate to which exception, is taken is paragraph 4, which reads as follows:

"In December 1974, Judge Andrew B. Ferrari, of the Juvenile and Domestic Relations Court, Arlington County, Virginia, indicated he would decline to accept jurisdiction over William D. Hill if the Commonwealth Attorney's Office for Arlington County, Virginia, in its prosecutorial discretion declined to prosecute William David Hill."

On February 27, 1975, Judge Ferrari wrote a letter to the Assistant United States Attorney, which is here quoted:

"It has come to my attention that the United States District Court for the Eastern District of Virginia wishes to be apprised of the position of this Court in regard to the above-referenced individual.

"In addition to reviewing Mr. Brendan Freeley's letter of January 31, 1975, to you stating that the Commonwealth Attorney's office of Arlington County, Virginia, does not wish to prosecute William David Hill for his alleged participation in a robbery that took place on November 5, 1974, at the Clarendon Bank and Trust Company located at 1930 Jefferson Davis Highway in Arlington, I have personally discussed the matter with him.

"Mr. Freeley has confirmed the Commonwealth's position and accordingly this matter will not come before the Court nor will any action be taken by the Court in this regard."

The district court held that by the letter of February 27th the Juvenile and Domestic Relations Court had refused to assume jurisdiction over Hill with respect to the act with which he was charged. We agree.

The defendant argues that since, under Virginia Code of 1950, §§ 16.1–164 and 16.-1–158(1)(i), the Virginia court would have had jurisdiction over a juvenile who "violates any State or federal law," and since, in Virginia, a prosecution under the Juvenile Delinquency Act may be commenced by a person other than the Commonwealth's Attorney, some kind of formal proceeding was required to have been instituted in the Virginia court with a formal order declining jurisdiction before federal jurisdiction would have attached. Section 16.1–158(1)(i) of the Virginia Code provides that for a violation of federal law " . . . jurisdiction in such cases shall be concurrent and shall be assumed only if waived by the federal court." Thus, taking the position of the defendant, neither court could have jurisdiction, for the Virginia court should not take jurisdiction unless the matter had been waived by the federal court, and the federal court should not have jurisdiction unless the State had refused it. The conclusion reached from the defendant's position is that he could only be proceeded, against as an adult. But, when the United States moved to transfer the case to proceed against Hill as an adult under § 5032, he opposed that motion, which was sustained by the district court. Of course, this would have left no federal forum in which to try the defendant.

■ We are of opinion that such a strained construction should not be placed on § 5032. The United States argues that we should follow *United States v. Vancier*, 515 F.2d 1378 (2d Cir. 1975), which held that the certification was unreviewable, or, at the very least, should not be subject to review absent an allegation of bad faith. We do not find it necessary to choose between the two views espoused by the government and the contention of the defendant that the complete proceeding is subject to review under ordinary standards, for we are of opinion that the letter from the Virginia court dated February 27th to the United States Attorney was a sufficient basis for the United States Attorney to file his certificate in accordance with the statute, and that the district court was justified

in treating the letter as a refusal of jurisdiction. So, it is not necessary for us to find what conditions should obtain to hold that the statute had not been complied with. Here, there has been a compliance, and a discussion of what might not be a compliance would be dicta.

We have also examined the defendant's other assignments of error which complain that the United States Attorney was without authority to certify the prosecution in the district court and that the defendant was deprived of a speedy trial under the Sixth Amendment as contrasted to § 5036 of the statute. We are of opinion they are without merit.

The judgment of the district court is accordingly

AFFIRMED.