**In re Adorno DUBBIOSI, Deportation Proceedings.**

**Misc. No. 2937.**

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 31, 1961.

Walter B. Martin, Jr., Norfolk, Va., for petitioner.

Joseph S. Bambacus, U. S. Atty., Roger T. Williams, Asst. U. S. Atty., Richmond, Va., for respondent.

WALTER E. HOFFMAN, District Judge.

The petitioner, Adorno Dubbiosi, having exhausted his administrative remedies, seeks judicial review of an order

**66**

of deportation entered on April 16, 1959, as modified with respect to an immaterial point by the Board of Immigration Appeals. The order complained of is that Dubbiosi, prior to entry and at the time of entry into the United States, knowingly and for gain assisted, aided and abetted other aliens to attempt to enter the United States in violation of the law. § 241(a) (13), Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (13).

There is no dispute as to the material facts. Dubbiosi, a native of Monaco and citizen of Italy, was a member of the crew of the Italian vessel Enrico C which arrived at the Port of Hampton Roads on February 23, 1959. The Immigration Service, having received advance information to the effect that there may be stowaways aboard, proceeded to board the vessel. They examined the crew members in anticipation of granting shore leave. Dubbiosi, as a member of the crew, was given a D–1 landing permit which made him eligible to go ashore and thereafter depart on the same vessel. The issuance of this D–1 landing permit, standing alone, constituted an "entry" into the United States and, once having entered, Dubbiosi was then subject to deportation.

The sole issue turns upon the question of what constitutes an "entry" under the facts of this case. That Dubbiosi did aid, or attempt to aid, aliens who were not entitled to enter the United States is clear from the evidence.

At the time of the granting of the D–1 landing permits to the crewmen, including Dubbiosi, the Immigration Service had posted guards on the vessel and the crew members were not allowed to leave pending the completion of the search for the stowaways. It follows that, at the time the D–1 landing permit was issued to Dubbiosi, he was under physical restraint in the sense that his D–1 permit was not effective until the search had been completed. The stowaways having been located, and Dubbiosi implicated, he was then taken off the vessel under guard, arrested, and placed in jail.

■ The Immigration and Naturalization Act of 1952 defines the term "entry" as the "coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise." 8 U.S.C.A. § 1101(a) (13). We do not believe, however, that this definition removes the requirement of establishing not only physical presence, but also freedom from official restraint, before "entry" is accomplished.

■ In a literal and physical sense Dubbiosi entered the United States when the Enrico C reached the waters within the territorial limits of this country. But, as pointed out in United States v. Vasilatos, 3 Cir., 209 F.2d 195, 197, the actual clearance is not accomplished so long as the crewmen are detained pending formal disposition of their requests for admission. Moreover, as clearly pointed out in Lazarescu v. United States, 4 Cir., 199 F.2d 898, the prevailing view with respect to bona fide crewmen is that freedom from official restraint must be coupled with physical presence before it can be said that the "entry" has been accomplished.

■■ As it is conceded that Dubbiosi was under physical restraint, he did not "enter" the country and, therefore, is not subject to deportation. The proceeding should be one for exclusion. Dubbiosi is entitled to a declaration of his rights, even though, in the interim, he has left the United States.

Order in accordance with the opinion.